314-224, capable stated, although I have to leave, I am Mark Foster, and this is a revisit of the comments of Joseph Skelnick. Good morning, your honors. Good morning, counsel. May it please the court, my name is Josette Skelnick, I'm with the Office of the State Appellate Defender, and I'm here this morning on behalf of Regis Woods. Regis Woods is appealing from the second stage dismissal of his post-conviction petition. He was originally convicted in 2004 of the first-degree murder of Cassandra Mullen and the attempted murder of Charles Howard following a bench trial before Judge Robert Levis. This court affirmed the defendant's convictions on direct appeal in 2006, and almost immediately after the defendant's petition for leave to appeal was denied, he filed a pro se post-conviction petition back in 2007. Judge Levis summarily dismissed the pro se petition, and this court in 2010 remanded this case for second stage proceedings. Judge Levis then dismissed the second stage petition without an evidentiary hearing based essentially on the judge's finding that the defendant was not entitled to any relief because he had already found him guilty at the bench trial. So we're now coming up on almost ten years since Mr. Woods first filed his pro se petition, and we're still in the midst of the post-conviction process. And we're asking that the defendant be given an evidentiary hearing in this case on three separate claims. The first is a claim of actual innocence based on the affidavit provided by Augustus Spearman. The second is a claim that his due process rights were violated based on the affidavit of the attempted murder victim, Charles Howard. And the third, based on a claim of ineffective assistance of trial counsel, based on trial counsel's failure to undertake a reasonable investigation, which would have enabled them to locate and present exculpatory evidence on the defendant's behalf, which is supported by the affidavit of Patricia Sharpe, who I would point out is an independent third-party witness with no connection to the parties, and who would have directly undercut the testimony of Stephen Smith, claiming that he was present at the trial. And they saw Regis Woods there. With respect to all of these claims, I think it's important to keep in mind, first, there was no physical evidence in this case tying Regis Woods to these crimes. Second, Mr. Woods has consistently, throughout the proceedings, protested his innocence. And third, there's no motive that was ever shown in this case as to why he would have wanted to harm either Cassandra Molen or Charles Howard. So I think that's important in determining whether an evidentiary hearing is warranted. With respect to the claim of actual innocence, based on Augustus Spearman's affidavit, I think it's also important to keep in mind that in this court's decision from the first-stage dismissal, the court recognized that the information from Mr. Spearman was new. It could not have been discovered earlier through the exercise of due diligence. He first met up with Mr. Spearman when they were both incarcerated at Menard following his conviction. It was material because it refuted the eyewitness testimony of Charles Howard, and it was non-cumulative because no one else had ever testified to seeing another person commit the offense. And perhaps most significant, the court recognized that it could likely change the outcome at a trial because if Spearman were found to be a credible witness, this court said, his statements support Woods' assertion he was not the shooter and could tip the balance in a case where no physical evidence put Woods at the scene of the crime. Well, assessing the credibility of these assertions is exactly what the evidentiary hearing is designed for. So on that basis, we would ask for an evidentiary hearing on that claim. With respect to Charles Howard, Charles Howard was the key witness at this trial. It's well established that the state's use of perjured testimony, knowing use of perjured testimony at trial, violates a due process right. Charles Howard at the time of trial, as this court itself said on the direct appeal, unequivocally and uncontroverted in his identification of the defendant. Well, we now know from his affidavit that the reason he was so positive and insistent on his ability to identify the defendant was because he was told by the police and the prosecutors in this case that if he didn't stick by this positive identification, he would be sent back to prison. And that he would be charged with perjury and contempt. When Judge Olivas found Regis Woods guilty, he himself found that Charles Howard was the key witness. He said he recognized that Stephen Smith, who claimed to be near the scene, that he had some credibility problems because he had some pending armed robbery charges. And he said it all keeps coming back to Charles Howard. Well, we now know from the affidavit, which must be presumed to be true, that Howard wasn't really sure of his identification of the defendant. That he was testifying to that fact falsely because of what he says was coercion from the police and the prosecutors. So this also makes out a substantial showing of a violation of the defendant's constitutional rights and we're also asking for an evidentiary claim. So Howard was on parole at the time, correct? He was, yes. Did he remain on parole? I believe he did, yeah. And I would also point out that there's also evidence, other evidence, from our trial court record that corroborate other claims he made in his affidavit, which was that I kept telling them I wasn't sure, I didn't want to testify that I was sure, and I tried to avoid testifying by just not showing up at trial. And in fact, there were several occasions when they were ready for trial, they came to trial, Charles Howard wasn't there. So that corroborates his claim that I only did this because of threat. At one point they actually took him in on a warrant and they put him on a short leash. There's some information in the trial record about Mr. Howard having to report to one of the prosecutors on a daily basis. So there's certainly evidence in here of constant contact between Charles Howard and the prosecuting team. Well, that by itself isn't evidence of nefarious... No, no, but it does corroborate his claim that he was being pressured by the prosecutors and the police to... Well, at least to testify, I guess it's a question of fact whether... Correct, a question of fact that should be, yes, should be assessed at an evidentiary hearing. And that's in the affidavit. In his affidavit he says, I just kept not showing up at trial hoping they would just not call me. And then they finally brought him in on a warrant. And I'm not sure, I have some vague recollection they may have even kept him in the county jail for a period of time. But certainly he showed himself to be a reluctant witness until he testified. And then he was very insistent at trial about his ability. He said, I don't have any problem with my eyesight, I got a good look at him. And now he's saying, I was not sure. And I only testified because of these threats from the prosecuting officials. With respect to the third claim involving Patricia Sharp, this claim is very important with respect to the testimony of Stephen Smith. And goes directly to the veracity of his testimony at the defendant's trial. Stephen Smith claimed that at the time this offense occurred, he was one street or so over on Miller Street. He was very specific about where he was located and who was there and what he was doing. He said he was parked on 7 Miller Street. There was a van parked directly behind him. He was engaging in a drug transaction with the person in the van. He said at that time he saw a car with the engine running, parked or backing in, and then parked in a driveway at 8 Miller Street, directly across from where he was standing, conducting his drug transaction. He said he saw flashes and heard shots and then shortly after that, that Regis Woods popped up in front of him, holding a gun in his hand and jumped into, oh, I should add, he also said that the person sitting in the car waiting in the driveway at 8 Miller was David Woods, a cousin of the defendant. And he then said that he saw the defendant pop up in front of him with a gun, get into the car sitting in that driveway and drive off. Patricia Sharp is a witness who had lived at 8 Miller Street for about two decades at the time of the shooting. She was still living at 8 Miller Street at the time of post-conviction counsel's investigation into this case. He obtained an affidavit, actually his investigator obtained an affidavit from her, saying that she was returning from the casino on the night of the shooting, that she pulled into her driveway, and as she got out of her car and immediately as she entered her home, she heard shots, and that at the time she pulled into her driveway and entered her home, she saw no one in the area, she saw no transactions taking place, she saw no vehicles, there was no car in her driveway, which would be hard to miss if it was sitting in her driveway with the engine running, and she said that no one had ever contacted her from the defense during the entire time this case was pending. I have to agree with trial post-conviction counsel that this kind of information is really investigation 101, that you know of a specific address where a witness who's a critical, one of the critical witnesses claims to be, and you know there's a home there and that there's supposed to be a car park there, who would not make an attempt to go and speak to the witness at that address to find out if that witness has any relevant information? There's no indication that, and she said no one ever contacted me until, and she was readily available. She's now been living there more than three decades. She also said that if she were called to testify, she would testify to all of these facts. So on that claim also, I think he's made a substantial showing that defense counsel were ineffective by not locating her. Their defense counsel in fact understood that Stephen Smith was also an important witness, and the judge himself said Stephen Smith corroborated Charles Howard's testimony. And what they tried to do was impeach his ability to observe what was happening. They presented some photographs. They also brought in Jonathan Davis, who said I was not with Stephen Smith that evening. But they didn't present any evidence to directly undercut Stephen Smith's claim that he was there, and this witness would have done that. So there's several cases I've cited in my brief. McKeel, Coleman, Morris, Wright, Solomon. Steudle I think is also a known Supreme Court case that's relevant, which says that with respect to defense attorney's obligations, that defense counsel have a professional obligation, legal and ethical, to explore and investigate a defendant's case, and determine whether a defense attorney is ineffective for failing to investigate and uncover exculpatory evidence by looking at the value of the evidence that was not presented, and the closeness of the evidence that was presented. Well the value of this evidence was that it directly undercut Stephen Smith's testimony, putting Regis Woods at the scene. And now we also have Charles Howard saying, I'm not sure of my identification. I don't know who it was that was the shooter. The closeness of the evidence is also apparent. Again, no physical evidence, no motive for why Regis Woods would commit this offense, and he's always maintained his innocence. So on that basis, your honors, we would be asking that this case be remanded for an evidentiary hearing on each of these claims. All right. Thank you. Thank you. Mr. Ostl. Good morning, your honors. May it please the court. This appeal is about three affidavits, and whether they suffice to get defendant to a third stage evidentiary hearing. The people will briefly discuss the three issues in order the defense counsel has presented them. Defendant asserted he first raised a claim of actual innocence based on Augustus Spearman's affidavit. And Spearman, of course, was an inmate in Menard at the same time the defendant was in prison there. Defendant asserts that Spearman's affidavit meets the test to warn a new trial based on newly discovered evidence. In his affidavit, Spearman did not aver that he witnessed the shooting edition. Spearman's affidavit did not mention that there were two shooters or that shots were fired from two locations. It did not name the date of the shooting, the sex of the shooter, or that anybody had been shot. And Spearman did not say he'd be willing to testify on a trial. An affidavit must identify the source and character of the evidence and the availability of the alleged evidence. And Spearman's affidavit did none of these things. In his brief, defendant challenged victim witness Charles Howard's description of the second shooter whom Howard identified as a defendant. Spearman's affidavit states that the person Spearman saw shooting was wearing a red jersey and dark pants. Defendant asserted Howard's description of defendant's clothes as a black hoodie and a black do-rag was vague. And in his brief, defendant suggested that Spearman saw the person that Howard identified as defendant. And defendant claims it was possible the shooter Howard described as wearing black clothes was actually wearing a red jersey under his hoodie. Now, even accepting Spearman's affidavit is true, the fact that on some unspecified date in May of 2003, Spearman saw a person shooting in the same area as his crime, and this person was wearing different clothing than the two shooters identified by Howard, shows Spearman observed a different shooting on a different day. The people known at trial, Stephen Smith, testified that he was at Miller and Washington Streets at the time of the shooting. He heard two sets of gunshots and saw sparks on Washington Street. And soon after, he saw a defendant wearing black clothing, walking with a gun in his hand. Thus, Spearman's affidavit was not of such conclusive character that it could have possibly changed the outcome of defendant's trial. As far as the second issue, defendant asserts that Charles Howell's recantation affidavit shows the people committed prosecutorial misconduct knowingly introduced perjured testimony at trial. In his brief, defendant acknowledged Howard consistently identified defendant as the person who murdered Cassandra Moland. And defendant asserts Howard's affidavit shows his trial testimony was coerced by threats from prosecutors and detectives, and Howard's affidavit shows people presented evidence they knew to be false. Howard's affidavit does not qualify as newly discovered evidence, and to be such, it must be evidence that was not available at defendant's original trial, and that the defendant could not have discovered through diligence. Defense counsel at that time could have discovered this alleged coercion prior to trial simply by asking Howard if anyone had threatened him to get him to testify against defendant. And as people pointed out in our brief, when questions of perjury  were raised, the trial judges justified in dismissing a petition without an evidentiary hearing when he or she presided over the defendant's trial. The First District in Jones' 2012 case stated, recantation evidence standing alone does not rise to the level of a constitutional violation that would entitle a convicted person to a post-conviction evidentiary hearing, let alone post-conviction relief. People cited on pages 26-27 of our brief showed that recanted testimony is regarded as inherently unreliable, and therefore courts will not grant a new trial on that basis except in extraordinary circumstances. This is especially true where the recantation involves a confession of perjury as it did in this case. Howard was in prison at the time he provided his affidavit, and such affidavits are considered suspect. In a trial, Howard clearly identified the defendant as the shooter who had murdered Ms. Mullin. The trial judge observed that Howard had twice identified the defendant in photo lineups, and Howard's recantation was shown to be false by trial testimony of four police officers and by Howard's own call to 911 at the time of the shooting that clearly identified the defendant as the shooter, Ms. Mullin. In affirming the defendant's conviction on direct appeal, this court found Howard's testimony was corroborated by the direct evidence, and as the judge did in his review on this post-conviction petition, that Howard repeatedly corrected attorneys at trial when they tried to discount his identification of defendant. Thus, Howard's affidavit did not show the people knowingly introduced perjury testimony at trial. On the third issue, the defendant asserts he made a substantial showing that his trial attorneys were ineffective when they failed to locate Patricia Sharp and present her testimony at trial. Now, in her affidavit, which was filed 10 years after the shooting at issue, Ms. Sharp does not aver she ever attempted to contact anyone regarding these shootings, and she does not say she would have testified at trial. Sharp does not state that defense counsel did not attempt to contact her prior to trial. At best, had Sharp testified at trial, her testimony would only have served to challenge the credibility of Mr. Smith's testimony, but it would not have disputed Howard's identification of defendant as Ms. Mullin's killer. Now, this was a bench trial, and Smith had already informed the trial judge that he was testifying under use immunity, and Smith testified he had been selling drugs at the time of the shooting, so his credibility already was suspect at best. Ms. Sharp's affidavit does not specify the actual time she arrived home, and it's cumulative to photographs submitted at trial and includes Sharp's opinion that no one could have seen flashes from a gunshot through the trees. On a cross-examination of Mr. Smith at trial, defense counsel introduced photographs of the locations at issue, including the lot full of trees at the corner of Miller and Washington streets, which is the corner at issue, and counsel challenged Mr. Smith's testimony that he saw sparks from a gun through the trees at night. So this is truly a cumulative affidavit. In her affidavit also, Sharp does not indicate that no one could have pulled into Miller Street shortly after she did without her being able to see them or hear the vehicle arrive. Her affidavit does not specify how many shots she heard, and her assertion that the shots came from 512 Washington is clearly based on her knowledge that Mullin had been shot at that location. From inside her house, there's no way that Mullin could have determined the specific location where the shots had been fired. And Sharp's affidavit does not establish the defendant's actual innocence. Thus, even if counsel had been deficient by not attempting to locate Ms. Sharp, the defendant was not prejudiced, where Sharp's testimony, if offered, could not have changed the outcome of the trial. The defendant also asserts his trial attorneys were ineffective, where they failed to follow through on their request that the judge view the area where Smith claimed to be standing when the shooting of Mullin Howard took place. But the judge completely denied going out to that particular location earlier, and so he said if they could not recreate the exact conditions at the time, it would not have been probative. So the defendant fails to show ineffective assistance of trial counsel. And the people ask this court to affirm the second stage dismissal of defendants amended post-conviction petition. If you have no other questions, I have nothing else for you. Thank you. Ms. Gelmick, Supervisor Butler? Yes. Well, I have to say that I'm somewhat flummoxed by the state's argument. The state's primary argument seems to be that the defendant's not entitled to an evidentiary hearing because Charles Howard positively identified him at trial. But that's exactly one of the issues that's at issue in the post-conviction petition. Well, let me ask you this, just about one of the state's arguments here. And they said that case law supports the notion that where the judge hearing the post-conviction can dismiss a claim related to recanted testimony at the second stage of the evidentiary hearing if that judge presided over the trial. That's wrong. That's absolutely wrong. The state is relying on People v. Hernandez. People v. Hernandez used, first of all, People v. Hernandez did not even really state that as a holding because in that case the trial judge was not the same judge as the post-conviction judge. But People v. Hernandez relied on an abuse of discretion standard. The Illinois Supreme Court has made clear in Coleman to start with and more recently in People v. Sanders that you do not assess a second stage petition under an abuse of discretion standard, that it's a de novo standard of review. And in fact, the facts in Coleman involved a recanting witness. And the state had argued in that case, well, when you have a recanting witness, that's an unreliable piece of evidence and the post-conviction judge is justified in denying an evidentiary hearing. And the court said, no, whether it's a recantation or not, it still involves an assessment of the credibility of that witness. And you can't assess the credibility of the witness or the recantation without an evidentiary hearing. In this particular case, Judge Leavis, sure, Judge Leavis heard Charles Howard's testimony at trial, he didn't hear Charles Howard's testimony as to why he recanted or as to what pressures were placed on him. So how could he rationally assess whether that recantation was reliable without an evidentiary hearing? Sanders is another case where, in fact, in Sanders, the trial judge was the same as the post-conviction judge and had actually heard the recanting witness's testimony at another evidentiary hearing and had already assessed the credibility of that witness's testimony at another evidentiary hearing in a post-conviction petition. And the court said, that doesn't matter. You look at whether the facts as stated, taken as true, make a substantial showing of a constitutional violation. You don't assess credibility until you get to the evidentiary hearing stage. There's also a few misstatements that the state has made that I just want to point out. With respect to Augustus Spearman's affidavit, the state says, well, he didn't even say he saw the shooting. Well, in fact, he says in his affidavit that after he spent some time talking to Regis Woods and talking about where they were from and learned of the offense he was being incarcerated for, he says, I became aware of that the incident he was being imprisoned for, I actually witnessed the shooting that took place. He also says, I clearly saw a man wearing a red jersey. So one, he does say he saw the shooting. Two, he says it was a man he saw shooting who in no way resembled Regis Woods. This court, when it remanded the first time on the PC, referred to Spearman's affidavit as new evidence justifying it. Correct. Correct. Found not only that it was new evidence, that it couldn't have been discovered through due diligence, and that basically if he's found to be a credible witness, it could change the outcome of the case. So that's what we're asking for, a hearing where he can determine whether he's entitled to a new hearing. Charles Howard's affidavit as not being newly discovered evidence, I find it really somewhat incredible, and we're talking about credibility, to believe that if defense counsel had asked a witness who's being threatened with going back to prison and being charged with crimes, that all defense counsel had to do was ask prior to trial, and Charles Howard would have admitted this to him. I mean, that was the very consequence he feared, that if he didn't testify, as the prosecutors told him to, he was going to go back to prison. And again, that... You mean ask the witness at trial, not prior to trial? I'm sorry? You said prior to trial? Right. The state is suggesting that the defense could have discovered this before trial simply by asking Charles Howard if there was a reason why he was positively identifying the defendant. Could ask at trial, too, right? Could ask. But, yeah, I mean, he was already on the stand lying about, according to his affidavit, lying about his ability to positively identify the defendant, so it's hard to imagine that he would have then said, oh, you got me. Yep, I'm not really sure. I mean, he even denied at trial that he had told a police officer right after the shooting that he wasn't sure. He said, no, I never said that. No, it's absolutely him. It's absolutely Regis Woods. Well, you said lying at trial. Isn't that what the evidence you're arguing for is for? Sure. Whether he was lying at trial or he's lying now. Right, sure. Okay, so you're assuming a conclusion now. Right. No, absolutely. Yeah, yeah, sure. We should be assessing which is credible. Right, right. With respect to Patricia Sharp, she says in her affidavit, if called to testify, I could testify as follows. These allegations, first of all, have to be liberally construed, and as People v. Smith makes clear, you have to show that you know the source of the information and that that source is available. Counselor, can you point me? Okay, thank you. She's saying, in fact, they recognize in People v. Smith, a recent first district case, that if a witness gives an affidavit to a defense attorney, says they're willing to testify, you know who the witness is, you know what their testimony is going to be, that's a showing that she's available and willing to testify. I can't see how else. So what you're saying, to summarize it, is that all you must do is make a showing, the assessment of the sufficiency of that showing as we're hearing. Absolutely, that's what we're saying. So, again, we would ask that in all three of these claims, that Mr. Woods be given an evidentiary hearing. Thank you. All right, thank you both for your arguments here this morning. This matter will be taken under advisement, written disposition will be issued, and right now the court will be in recess until 1 p.m. Thank you.